IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Case No. 2:24-cv-03842-MHW-CMV

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

  Plaintiff,

v.

HRIDAANSH HOSPITALITY LLC d/b/a
CASA DI PIZZA,

  Defendant.

## PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AND MEMORANDUM IN SUPPORT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant Hridaansh Hospitality LLC d/b/a Casa Di Pizza ("Defendant"), and states as follows:

### PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1. On August 14, 2024, Plaintiff filed its Complaint in this action.

2. On August 23, 2024, Defendant was served with a copy of the Summons and Complaint in this action. See D.E. 6.

3. On October 2, 2024 (following expiration of Defendant's response deadline), Plaintiff filed its Motion for Clerk's Default against Defendant. See D.E. 7.

4. On October 3, 2024, the Clerk entered a Clerk's Default against Defendant. See D.E. 8.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

**I.      Plaintiff's Business and History[2]**

10.     Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

11.     Plaintiff operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

12.     Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

13.     Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

14.     Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used). Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end

---

[1] "Once default is entered, the defaulting party is deemed to have admitted all of the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments." Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing Visioneering Constr. v. U.S Fid. & Guar., 661 F.2d 119, 124 (6th Cir. 1981)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[2] The facts set forth herein are based upon the well-pleaded allegations of the Complaint and the November 19, 2024, Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

2

users' (i.e., grocery stores, meat/dairy sellers, etc.).

15. Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

**II. The Work at Issue in this Lawsuit**

16. In 2001, a professional photographer employed and/or contracted by Plaintiff created a photograph of hot chicken wings on a plate with celery and dipping sauce titled "ChickenWingHot007" (the "Work"). A copy of the Work is displayed below:



17. The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the US Copyright Office on September 29, 2016 and was assigned Registration No. VA 2-019-412. A true and correct copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

3

18. Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

### III. Defendant's Unlawful Activities

19. Defendant is a pizza restaurant that specializes in thin-crust pizzas, subs, ribs, wings, and salads.

20. Defendant advertises/markets its business through its website (https://ordercasadipizzamenu.com/?utm_source=gbp&fbclid=IwAR1Ar_DeBfy8tEatI46dN9OWIgyxjFQ1QvAQrfDzmjaVEvzHvtGbiQDZWqQ), social media (e.g., https://www.facebook.com/casadipizza) and other forms of advertising.

21. On April 3, 2021 (after Plaintiff's above-referenced copyright registration of the Work), Defendant displayed and/or published the Work on its website, webpage, and/or social media (at https://www.facebook.com/casadipizza/photos/10157906002167791):



22. A true and correct copy of a screenshot of Defendant's website, webpage, and/or social media, displaying the copyrighted Work, is attached hereto to the Complaint as Exhibit B thereto.

23. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its

business or for any other purpose.

24. Defendant utilized the Work for commercial use.

25. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

26. Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

27. Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees. Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

28. Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in May 2022.

16. Following Plaintiff's discovery of Defendant's infringement, Plaintiff retained counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) an initial infringement notice to Defendant to notify it of the impermissible use.

## ARGUMENT

**I.  Applicable Legal Standards**

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2).

## II.     Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). Copyright infringement has two elements that must be proven: "(1) ownership of the copyright by the plaintiff; (2) copying by the defendant." Ford Motor Co. v. Airpro Diagnostics LLC, No. 20-CV-10518, 2022 U.S. Dist. LEXIS 228708, at *23 (E.D. Mich. Dec. 20, 2022).

### 1.     Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c). Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication. The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See, e.g., Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to find invalidity of the registration because the registration was made over five years after the

Jesse Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot find, as a matter of law, that the certificate of registration is invalid."); Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans."). As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not *forbid*[3] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[4]
> The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

---

[3] Emphasis in original.

[4] Emphasis added.

### 2. Defendant Copied the Work

A plaintiff may establish an inference of copying by showing that (1) "defendant had access to the work," and (2) "that the original and allegedly infringing work are substantially similar." Parker v. Winwood, 938 F.3d 833, 836 (6th Cir. 2019). However, "even when a plaintiff is unable to prove access, she can establish copying by showing a 'striking similarity' between her work and the allegedly infringing one.'" Id. (quoting Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 317 (6th Cir. 2004)).

Here, the screenshots of Defendant's website, webpage, and/or social media unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

## III. Defendant's Infringement was Willful

"Infringement is willful when the infringer has knowledge that his conduct constitutes copyright infringement." Calibrated Success, Inc. v. Charters, 72 F. Supp. 3d 763, 774-75 (E.D. Mich. 2014). Knowledge may be either actual or constructive. Id. "To prove constructive knowledge, courts have generally required the copyright owner to show that the 'infringer has acted in reckless disregard of the copyright owner's right.'" Id. When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

"A determination of willfulness requires an assessment of a defendant's state of mind." Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1186 (9th Cir. 2016). Willfulness determinations are thus difficult when a defendant (as here) defaults and does not participate in the lawsuit. See, e.g. Pearson Educ., Inc. v. Aegis Trading Corp., No. 16-CV-0743 (GBD)(SN), 2017 U.S. Dist. LEXIS 45887, at *18 (S.D.N.Y. Mar. 27, 2017) ("The reason for why it is difficult to assess defendants' profits or plaintiffs' lost revenues is defendants' willful conduct and their default and refusal to participate in this litigation."). As a result, the vast majority of courts will infer willfulness from a defendant's default. See, e.g. W. Stone Works Co. v. Wilson's Funeral Home, No. 2:21-cv-02103-TLP-tmp, 2021 U.S. Dist. LEXIS 133878, at *5 (W.D. Tenn. July 19, 2021) ("[B]ecause Plaintiff obtained a default judgment here, Plaintiff has met its burden of showing that Defendants willfully infringed Plaintiff's work."); Kinman v. Burnop, No. 3:18-cv-00809, 2020 U.S. Dist. LEXIS 24461, at *12 (M.D. Tenn. Feb. 12, 2020) ("Where a defendant has defaulted, willful copyright infringement is proven."); Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (same).

The above demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work. Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

### IV. Plaintiff's Damages

#### A. *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages include "…lost profits and 'reasonable royalty rates,' or what a willing buyer would have been reasonably

9

required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers." MGE UPS Sys. v. GE Consumer & Indus. Inc., 622 F.3d 361, 366 (5th Cir. 2010). A copyright owner may also seek 'any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.' 17 U.S.C. § 504(b). Id.

The copyright owner may also recover the fair market value of a license authorizing the defendant's use. Straus v. DVC Worldwide, Inc., 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) (citing On Davis v. The Gap, Inc., 246 F.3d 152 164-68 (2d Cir. 2001) (holding that a reasonable license fee--measured by the fair market value of a license authorizing the defendant's use--may be an appropriate measure of actual damages)). "Proof of industry practice 'inarguably is crucial to the estimation of actual damages.'" Id. Thus, a copyright holder's actual damages are determined by what a willing buyer would have been reasonably required to pay a willing seller for using. Id.

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at a minimum of $999.00 per month (depending on the total number of end-users allowed access to the photographs) with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to

advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the Work), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter. The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located. A true and

correct copy of Plaintiff's infringement notices with respect to the Work at issue in this lawsuit are attached to the Jones Decl.

The screenshot of Defendant's website, webpage, and/or social media shows that the Work was displayed and/or published by Defendant at least as of April 3, 2021 and was removed sometime after the filing of this Complaint. Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded to Defendant's website, webpage, and/or social media and removed.

For each year that Defendant published the Work, Plaintiff would be owed an annual license fee of (at minimum) $11,988.00. Here, it is known that the Work was published at least as of April 3, 2021, and that it was removed sometime after the filing of the Complaint. Given the above, the fairest beginning measure of Plaintiff's actual damages in this case is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the number of years of use. As such, Plaintiff believes its actual damages are equivalent to a 3-year licensing period – (a) April 3, 2021 – April 3, 2022; (b) April 3, 2022 – April 3, 2023; and (c) April 3, 2023 – at least April 3, 2024. This amounts to a total of **$35,964.00** ($11,988 x 3 years of use).

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find

12

>$11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022). The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts. See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos,

Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc., No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) (rejecting report & recommendation to award $1,000.00 in statutory damages and instead awarding $47,952.00 in statutory damages, representing the $11,998.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's

14

actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

### B. *Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement*

17 U.S.C. § 504(c)(2) provides that, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." "Merely proving willfulness does not automatically entitle a copyright holder to the statutory maximum. The Court retains broad discretion to determine an appropriate damages figure in each case." AF Holdings LLC v. Bossard, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013).

Where (as here) willful infringement has occurred, courts will generally award 3x – 5x the lost licensing fees. See, e.g. Nicholl v. Sec. Studies Grp., Civil Action No. 1:21cv0563 (TSE/JFA), 2022 U.S. Dist. LEXIS 95811, at *11 (E.D. Va. Mar. 25, 2022) ("In cases of knowing and deliberate infringement, it is common practice to award more than the statutory minimum and more than the infringer would have paid in licensing fees. An award equal to five times the typical licensing fee is also more likely to deter future copyright infringement than an award of the licensing fees alone."); Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d

184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather

16

information about the extent of Defendant's use of the Work/profits derived therefrom. Plaintiff's licensing structure is a strong proxy for calculating damages. Likewise to Judge Middlebrooks' finding in Patriot Fine Foods, and given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of **$71,928.00** ($35,964.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law. Plaintiff requests the Court to apply the same multiplier Judge Middlebrooks applied in Patriot Fine Foods, wherein his honor doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's actual damages, it is well within the Court's discretion to award substantial damages to the Plaintiff upon a finding of willfulness. For example, in Corson v Brown Harris Stevens of the Hamptons, LLC, the court found that willfulness entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C. § 504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual damages):

> So first the main issue was whether defendant's infringement was willful. I find here willfulness entitles plaintiff to the enhanced statutory damages provided by 17 U.S.C. Section 504(c)(2). The standard for willful infringement is not only knowledge on the defendant's part that what it did was infringement but also reckless disregard of the practice of protecting creativity, the very purpose of copyright. When the plaintiff can demonstrate, either directly or through circumstantial evidence, that defendant had knowledge that its actions constituted infringement, or recklessly disregarded that possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. Section 504(c)(2) are appropriate.
>
> Plaintiff successfully proved that her photograph was copyright

17

> protected. It's clear that defendant, as a sophisticated business, knew there was copyright involved and did nothing to check those rights or to clear permission to reprint from the photographer.
>
> I find that the infringement was willful, and I find that the conduct of indifference to the rights of others was egregious and that the statutory damages should be $25,000. There were no actual damages.

Corson v. Brown Harris Stevens of the Hamptons, LLC, 2018 U.S. Dist. LEXIS 248214, at *8 – 9 (S.D.N.Y. Jan. 24, 2018). Corson was a fully litigated case in which, though the Judge found that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long experience not merely compels restitution of profit and reparation from injury but also a desire to discourage wrongful conduct." Corson (referencing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952)).

V.      **Entry of a Permanent Injunction is Appropriate**

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that

18

Plaintiff has no adequate remedy at law.  For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff **$71,928.00** for Defendant's infringement of the Work, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper.

Dated: November 21, 2024

WESP BARWELL
475 Metro Place S. Ste 350
100 East Broad Street
Dublin, OH 43017
614-456-0488
Email: jbarwell@wesplaw.com

By: /s/ *Jessica A. Barwell*
Jessica A. Barwell, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that on November 21, 2024, the foregoing document and all attachments thereto were served via US Mail to: Hridaansh Hospitality LLC d/b/a Casa di Pizza, 2986 McKinley Avenue, Columbus, Ohio 43204 and via e-mail to: casadipizzacolumbus@gmail.com.

/s/*Jessica A. Barwell*
Jessica A. Barwell, Esq.